# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

| | | |
|---|---|---|
| CARLTON B. PARKS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19-cv-349 |
| | ) | |
| v. | ) | Judge Leitman/Steger |
| | ) | |
| JEFFREY LYASH, *as President and CEO* | ) | |
| *of Tennessee Valley Authority*, JOHN TERRY, | ) | |
| *in his individual and official capacities*, | ) | |
| EDWARD SPOONE, *in his individual and* | ) | |
| *official capacities*, KRISTI FOXX, *in her* | ) | |
| *individual and official capacities*, and JAMIE | ) | |
| LYNCH, *in her individual and official* | ) | |
| *capacities*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.    Introduction

Defendant Jeffrey Lyash, as President and CEO of Tennessee Valley Authority ("TVA"),

TVA, and Defendants John Terry, Edward Spoone, Kristi Foxx, and Jamie Lynch (the "Individual

Defendants"), in their individual and official capacities, move the Court to dismiss this action.

[Doc. 18]. Plaintiff brings various state and federal claims against Defendants related to his work

at a TVA facility, including employment discrimination on the basis of race and age, hostile work

environment, breach of contract, tortious interference, and civil conspiracy. [Doc. 17]. Defendants

argue Plaintiff failed to properly serve Mr. Lyash in his official capacity as head of the TVA within

90 days of filing the Complaint, requiring dismissal of all claims against him pursuant to Federal

Rule of Civil Procedure 12(b)(5) and 4(m). The Individual Defendants seek dismissal pursuant to

1

Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiff's federal employment discrimination claims cannot be maintained against individual employees and that his remaining claims are preempted by federal statutory schemes. For reasons that follow, the Court **RECOMMENDS** that the Motion to Dismiss [Doc. 18] be **GRANTED IN PART** and **DENIED IN PART**.

## II.     Factual and Procedural Background

Plaintiff Carlton B. Parks is an African American male who at all relevant times was over forty years old. [Doc. 17 at ¶ 8]. He is a former employee of Murray Guard, Inc., and alleges he was jointly co-employed by TVA from December 24, 2013, through October 3, 2014. [*Id.*]. He worked as an armed security officer on TVA job sites. [*Id.*]. Plaintiff alleges TVA paid for his armed security firearms course training so that he could become certified to meet TVA's requirements. [*Id.* at ¶ 10]. As a condition of employment, Plaintiff had to pass a criminal background check. [*Id.* at 11]. He obtained site access and clearance to work at TVA on December 24, 2013. [*Id.*]. Plaintiff signed a contract with Murray Guard and TVA for compensation of $14.27 an hour, plus $3.71 hourly for health, dental, life, vision, and retirement benefits. [*Id.* at ¶ 12].

Plaintiff was initially assigned to the TVA Raccoon Mountain site. [*Id.* at ¶ 13]. He filled out a Sensitive Security Clearance application request on December 26, 2013. [*Id.*]. He was told his clearance was pending and his job assignment was permanent. [*Id.*]. He was also told he needed clearance before he could work in a TVA site in Chattanooga, Tennessee. [*Id.* at ¶ 14].

2

Plaintiff alleges, *inter alia*, that Defendant Terry routinely gave Caucasian armed security officers clearance applications and allowed them to work at Chattanooga TVA sites without Sensitive Security Clearance approval. [*Id.* at ¶ 14]. He alleges his application was not submitted for processing until after his termination, and then it was discontinued. [*Id.* at ¶ 16]. He says he was removed from the Raccoon Mountain site on the basis that it was closing, and was told that TVA had no other work for him. [*Id.* at ¶ 17]. Plaintiff was reassigned to the Alstom Company to work at First Tennessee Bank in Chattanooga at a significantly reduced hourly wage of $8.90 without insurance and retirement benefits. [*Id.* at ¶ 18].

Plaintiff later learned that the Raccoon Mountain post did not close, and that Murray Guard and TVA hired a Caucasian female and Caucasian male in their mid-twenties for the exact position from which Plaintiff was removed. [*Id.* at ¶ 19].

Plaintiff alleges that, after inquiring about his prior position, he was offered another TVA job at Widow's Creek for a slightly lower hourly wage but slightly higher benefits. [*Id.* at ¶ 22]. He was told his Sensitive Security Clearance had not been approved, so this was the only opening available for him. [*Id.* at ¶ 23]. He accepted the position with the understanding that he would transfer to Chattanooga once a position became available. [[*Id.*]. In May 2014, Plaintiff applied for a supervisor position, but was told he was ineligible because he did not have Sensitive Security Clearance. [[*Id.* at ¶ 24].

On June 2, 2014, Plaintiff filed a formal complaint against his immediate supervisor at Widow's Creek, Al Shiflett. [*Id.* at ¶ 25]. Shiflett allegedly told Plaintiff he "did not like black people and agreed with slavery" and "agreed with segregation and the physical abuse of black

3

people." [*Id.* at ¶ 25]. Plaintiff asked to be transferred to Chattanooga and removed from Shiflett's supervision, and alleges he was told to try to get along with him. Shiflett became more hostile and aggressive with Plaintiff thereafter. [*Id.*]. According to Plaintiff, Defendant Terry was aware of Shiflett's "admitted" workplace misconduct but took no action. [*Id.* at ¶ 26].

Plaintiff alleges that the Individual Defendants had a meeting in September 2014 to "orchestrate a plan . . . to help Murray Guard get Plaintiff removed from TVA" due to the allegations he had been making. [*Id.* at ¶ 27]. Plaintiff was laid off from Murray Guard three weeks later. [*Id.*]. Plaintiff alleges that, during his time at TVA, he was never disciplined, written up, or reprimanded, but some of his co-workers had been and remained employed. [*Id.* at ¶ 31].

Plaintiff further alleges that Defendant Edward Spoone performed a "personal investigation on Plaintiff," despite having nothing to do with the hiring or management of Murray Guard contract employees. [*Id.* at ¶ 38]. Spoone apparently said Plaintiff was in violation of "unknown verbiage rules" of Murray Guard and erroneously claimed Plaintiff's paperwork contained falsehoods. [*Id.* at ¶ 41]. According to Spoone, one factor in having Plaintiff removed was a seven-year-old police report. [*Id.* at ¶ 42]. Plaintiff avers he had no criminal record and has never been convicted of a crime. [*Id.* at ¶ 42]. He further claims Spoone viewed his personal files in violation of the Tennessee Public Protection Act. [*Id.* at ¶¶ 39, 42]. According to Plaintiff, TVA and Murray Guard knowingly employed Caucasian security officers who did have criminal records. [*Id.* at ¶ 42].

On September 10, 2014, Plaintiff was told he would be laid off because TVA did not have work for him and therefore his Sensitive Security Clearance would not be issued. [*Id.* at ¶ 29]. He

4

was nonetheless mailed an application for Sensitive Security Clearance on September 18, 2014, which he completed and returned. [*Id.* at ¶ 30].

Plaintiff alleges TVA continued to hire security guards at Widow's Creek but did not call him back to work. [*Id.* at ¶ 35]. He claims TVA hired numerous Caucasian security officers in Chattanooga and allowed them to work without sensitive security clearance, after telling Plaintiff he could only work in Chattanooga if he obtained clearance. [*Id.* at ¶ 36].

Plaintiff contacted TVA's Equal Opportunity Compliance Department on September 30, 2014, to file a complaint based on disparate treatment. [*Id.* at ¶ 32]. He was laid off or terminated three days later, on October 3, 2014. [*Id.* at ¶ 33]. On October 28, 2014, Plaintiff called Defendant Jamie Lynch to check on his Sensitive Security Clearance application and was told his application was no longer being processed because he was no longer on the TVA contract. [*Id.* at ¶ 34]. He says did not know of the alleged involvement of the Individual Defendants until the TVA released a Report of Investigation on December 7, 2016. [*Id.* at ¶ 32].

In the course of the administrative proceedings, Plaintiff alleges TVA "dismissed and restructured" Plaintiff's complaint and denied being his employer. [*Id.* at ¶ 49]. He also claims TVA did not answer questions related to discriminatory conduct during the investigation process. [*Id.*]. According to Plaintiff, the TVA Equal Opportunity Compliance Department did not follow relevant guidelines in conducting their investigation. [*Id.*].

On the basis of these facts and others, Plaintiff asserts at least twelve causes of action against Defendants:

    1. Employment discrimination on the basis of race in violation of Title VII;

2. Retaliation for protected activities in violation of Title VII;

3. Hostile work environment harassment on the basis of race in violation of Title VII;

4. Age discrimination in violation of the Age Discrimination in Employment Act ("ADEA");

5. Intentional race discrimination in connection with a contract, in violation of 42 U.S.C. §§ 1981 and 1981a;

6. Breach of contract;

7. Interference with prospective employment relationship;

8. Tortious interference with employment contract;

9. Unlawful inducement of breach of contract and tortious interference with a business relationship, in violation of T.C.A. § 47-50-109;

10. Unlawful procurement of breach of contract in violation of T.C.A. § 47-50-109;

11. Civil conspiracy; and

12. Wrongful termination on the basis of race/ disparate treatment in violation of Title VII.

[Doc. 17].

Elsewhere in the Amended Complaint, Plaintiff also mentions intentional infliction of emotional distress, the Fair Labor Standards Reporting Act, invasion of privacy, the Fair Credit Act, and the Tennessee Public Protection Act. His claims are stated against the Individual Defendants in their official and personal capacities and against Mr. Lyash in his official capacity as the President and CEO of TVA.[1]

---

[1] Sued only in his official capacity, Mr. Lyash and the Tennessee Valley Authority are interchangeable for the purposes of the Motion to Dismiss. *See Myers v. Potter*, 422 F.3d 347, 357 (6th Cir. 2005) ("A suit against an individual in his official capacity is the equivalent of a suit against the government entity.").

6

Plaintiff claims that Defendants' misconduct has caused him financial and emotional suffering, lost job opportunities, lost wages, and lost benefits. [*Id.* at 21]. Plaintiff alleges he had a life-threatening medical incident in August 2019 and became permanently disabled as a result of the lack of preventative medical treatment because he lost health insurance. [*Id.*]. He seeks, *inter alia*, lost wages and benefits, compensatory damages for impairment of his credit, front and back pay, pain and suffering, liquidated damages, punitive damages under 42 U.S.C. § 1981a and the ADEA, and litigation expenses. [*Id.* at 21-22].

On June 11, 2020, a Motion to Dismiss [Doc. 18] was filed by the TVA, Defendant Lyash as President and CEO of TVA, and the Individual Defendants, "in a special, limited appearance." [*Id.* at 1]. The Motion seeks dismissal of the Amended Complaint pursuant to Federal Rules of Civil Procedure 4(m), 12(b)(5), and 12(b)(6). [*Id.*]. First, Defendants argue the Individual Defendants must be dismissed because Title VII provides the exclusive judicial remedy for claims of discrimination in federal employment, and Title VII claims involving a federal agency can only be brought against the agency. [Doc. 19 at 3]. Next, Defendants seek dismissal of Plaintiff's Tennessee state law claims and 42 U.S.C. § 1981 claim on the basis that TVA is an executive branch corporate agency and therefore federal employment discrimination laws provide the exclusive vehicle for Plaintiff to pursue his claims. [*Id.* at 5]. Finally, Defendants argue that, to serve TVA or Mr. Lyash in his official capacity, Plaintiff was required to serve the U.S. Attorney General, which he did not do. [*Id.* at 6].

Plaintiff timely responded, arguing *inter alia*, that he was not required to serve both the U.S. Attorney and the Attorney General in order to perfect service on the United States and thus

on TVA. [Doc. 20 at 4]. On July 27, 2020, the Court ordered Plaintiff to complete service on Mr. Lyash in his official capacity by serving a copy of the summons and complaint on the United States Attorney General. [Doc. 24]. On August 10, 2020, Plaintiff filed a letter with the Clerk's Office as well as documentation regarding service on the Attorney General. [Doc. 25]. The Court ordered Plaintiff to file a proof of service in compliance with Federal Rule of Civil Procedure 4(l) as to both the Attorney General and the United States Attorney for the Eastern District of Tennessee. [Doc. 26]. In addition, the Court ordered Plaintiff to file an executed return of service as to Jeffrey Lyash, as none appeared in the record. [*Id.*].

On November 2, 2020, Plaintiff filed a proof of service, indicating that a summons to Jeffrey Lyash was sent by certified mail to attorney Kevin McNamara, "who is designated by law to accept service of process on behalf of" Lyash and the TVA. [Doc. 27 at 2].[2] Plaintiff also filed a proof of service for Attorney General Barr, reflecting service by certified mail on August 3, 2020, and for U.S. Attorney J. Douglas Overbey, reflecting service by certified mail on April 17, 2020. [Doc. 28].

### III. Standard of Review

On a motion to dismiss for failure to state a claim, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Engler v. Arnold*, 862 F.3d 571, 574-75 (6th Cir. 2017) (internal

---

[2] Plaintiff's averment that Kevin McNamara was authorized to accept service on behalf of Jeffrey Lyash is the only evidence in the record on this topic. Defendants did not raise this issue in their Motion to Dismiss [Doc. 18] or seek to correct Plaintiff's assertion that Mr. Lyash has been properly served.

8

quotations omitted). "The [plaintiff's] factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). "Mere labels and conclusions are not enough; the allegations must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 575 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Regarding the motion to dismiss for failure to serve pursuant to Federal Rule of Civil Procedure 12(b)(5), the plaintiff "bears the burden of perfecting service of process and showing that proper service was made." *Sawyer v. Lexington-Fayette Urban Cty. Gov't*, 18 F. App'x 285, 287 (6th Cir. 2001).

### IV. Analysis

#### A. Motion to Dismiss Action as to Individual Defendants

The Individual Defendants move to dismiss all claims against them on the basis that Plaintiff's Title VII and ADEA claims may not be brought against individual employees. Defendants are correct, but their argument only necessitates the dismissal of the Title VII and ADEA claims against them individually, not dismissal of the action as a whole.

Title VII of the Civil Rights Act of 1964 provides the exclusive judicial remedy for claims of discrimination in federal employment. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976).

9

"It is well-established in the Sixth Circuit that an individual employee or supervisor who does not otherwise qualify as an employer cannot be held personally or individually liable under Title VII." *Smith v. Bd. Of Trustees Lakeland Community College*, 746 F. Supp. 2d 877, 891 (6th Cir. 2010) (collecting cases). And "Title VII, the ADEA, and the ADA define 'employer' essentially the same way." *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404 n.6 (6th Cir. 1997) ("The liability schemes under Title VII, the ADEA . . . limit liability to the employer."); *Johnson v. East Tenn. State Univ.*, 229 F.3d 1152 (Table) (6th Cir. 2000) ("Defendant Coogan, sued in his individual capacity, is not included within the statutory definition of employer under Title VII and its sister civil rights statutes, and accordingly cannot be held personally liable for discrimination."); *Smith v. Lomax*, 45 F.3d 402, 403 (11th Cir. 1995) (employees cannot be held liable under the ADEA or Title VII).

Plaintiff does not allege or argue that any Individual Defendant was his "employer" within the meaning of Title VII or the ADEA. In fact, he concedes he was unaware of their alleged involvement in his employment until after he challenged his treatment at TVA. Accordingly, the undersigned recommends that the District Judge dismiss Plaintiff's Title VII and ADEA claims against the Individual Defendants.

### B.  Motion to Dismiss State Law Claims and § 1981 Claim

Defendants next move to dismiss Plaintiff's state law claims and his § 1981 claim as preempted by Title VII and the ADEA. They argue Plaintiff's "core theories of recovery" arise under federal discrimination statutes that "provide the exclusive and preemptive judicial remedy for claims of discrimination with regard to the termination of Plaintiff's employment." [Doc. 21 at 3]. Defendants' argument rests entirely on a premise they do not concede—that Plaintiff was in

10

fact a federal employee. But Plaintiff has stated claims in the alternative; if he is not a federal employee, Title VII and the ADEA can have no preemptive effect. Moreover, Defendants present a categorical assertion of preemption without demonstrating how each of Plaintiff's claims is subsumed by a federal statutory framework.

Title VII of the Civil Rights Act forbids employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. §§ 2000e-2, 2000e-3. Until amended in 1972, federal employees were not protected by Title VII. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 825 (1976). In *Brown v. General Services Administration*, the Supreme Court of the United States examined the legislative history of the 1972 amendments and found an intent to create "an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Id.* at 828-29. It is now well-established that "[f]ederal employees must rely upon Title VII and other federal antidiscrimination statutes like the ADEA that apply to the federal government as the exclusive remedy for combating illegal job discrimination." *Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006). "For this reason, a federal employee alleging employment discrimination may proceed only under Title VII and may not proceed under § 1981." *Walker v. Henderson*, 4 F. App'x 248, 249 (6th Cir. 2001).

Likewise, the Sixth Circuit has consistently held that Title VII is the exclusive remedy for claims of discrimination in federal employment. The exact parameters of Title VII's preclusive effect, however, are less clear. District courts within the circuit have gone both ways on whether to allow, for example, an intentional infliction of emotional distress claim to be brought alongside a Title VII discrimination claim. *Compare Wallace v. Henderson*, 138 F. Supp. 980, 986 (S.D.

11

Ohio 2000) (Title VII did not preempt state law claim based on allegation of "highly personal injury" beyond retaliation); *Every v. Brennan*, No. 3:16-cv-710, 2018 WL 4568600 (E.D. Tenn. Sept. 24, 2018) (Title VII preempted state law claims that lacked any "distinguishing factual allegations"); *see also Brock v. United States*, 64 F,3d 1421, 1423 (9th Cir. 1995) ("Title VII is not the exclusive remedy for federal employees who suffer 'highly personal' wrongs, such as defamation, harassing phone calls, and physical abuse . . . When the harms suffered involve something more than discrimination, the victim can bring a separate claim.").

Defendants urge that Title VII is the exclusive remedy for a federal employee alleging employment discrimination. True enough. But Defendants carefully avoid the logical foundation of this argument—Plaintiff's status as a federal employee. According to Plaintiff, TVA took the opposite position during the administrative process, insisting Plaintiff was *not* a TVA employee. [Doc. 20 at 22]. If Plaintiff was TVA's employee, there is no question that his employment discrimination claims would have to be brought under federal employment discrimination statutes. But what if he was not? If the Court were to dismiss Plaintiff's state law and § 1981 claims without determining Plaintiff's employment status, he may be left only with Title VII claims he cannot pursue. Though he does not put so fine a point on it, Plaintiff's response in opposition makes clear he is pursuing his state law and § 1981 claims in the alternative.[3] His Amended Complaint alleges he was "jointly and co-employed" by TVA. Having pleaded his employment status in the alternative, Plaintiff is entitled to proceed with both sets of claims until his employment status is

---

[3] He argues, for example, that some of his claims may be brought "without an actual employee/ employer relationship." [Doc. 20 at 16]. In reference to his § 1981 claim, he notes multiple appellate courts have permitted independent contractors to sue under 42 U.S.C. § 1981. [*Id.* at 17].

12

determined by the Court. At the moment, this issue is not before the Court, and Defendants have raised no other challenge to Plaintiff's state law and § 1981 claims.

Finally, the Court observes that while Title VII and the ADEA preempt claims of discrimination in federal employment, they do not act as a bar to every adjacent claim regardless of its origins or content. While many of Plaintiff's allegations relate to employment discrimination, he also alleges, for example, that his personal information was used improperly, his security clearance stalled or denied for discriminatory reasons, and his relationship with Murray Guard intentionally tampered with. It is not immediately obvious that each of these claims would be preempted if Plaintiff was a federal employee. The Court is not oblivious to the difficulty of scrutinizing Plaintiff's myriad claims. But at the pleadings stage, the moving party bears the burden of demonstrating the insufficiency of each cause of action it asks the Court to dismiss.

### C.      Motion to Dismiss as to Tennessee Valley Authority

Pursuant to Federal Rule of Civil Procedure 12(b)(5), the Court may dismiss an action for insufficient service of process. "[T]he requirement of proper service of process 'is not some mindless technicality.'" *Friedman v. Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991) (*quoting Del Raine v. Carlson*, 826 F.2d 698, 704 (7th Cir. 1987)). Rather, it is an "essential prerequisite to the Court gaining personal jurisdiction over the defendant." *Tanksley v. Tenn. Valley Auth.*, No. 1:16-cv-487, 2017 WL 6391473, *3 (E.D. Tenn. Dec. 14, 2017). At the same time, "[c]ourts construe provisions of Rule 4 liberally in order to uphold service, requiring only 'substantial compliance.'" *Young's Trading Co. v. Fancy Import, Inc.*, 222 F.R.D. 341, 343 (W.D. Tenn. 2004) (*quoting Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982)); *Brown v. Nabors*, 2011 WL 2443882,

13

*10 (M.D. Tenn. June 15, 2011) ("Federal courts, however, unlike the Tennessee state courts, construe the provisions of Rule 4 liberally in order to uphold service, requiring only 'substantial compliance.'") (collecting cases). Insufficiency of service of process may also be waived. Fed. R. Civ. P. 12(h); *see Meadows v. Uniglobe Courier Serv. Inc.*, No. 5:08CV2530, 2009 WL 2340192, at *1 (N.D. Ohio July 28, 2009) ("Rule 12(h) states that insufficiency of service, *inter alia*, is waived only if it is never offered in a Rule 12 motion, is not raised in a Rule 12 motion in which it could have been raised, or is not included in a responsive pleading.").

Here, Defendants argue that Plaintiff failed to perfect service as to TVA or Mr. Lyash in his official capacity because he failed to timely serve the United States Attorney General. Defendant Jeffrey Lyash is the President and CEO of the Tennessee Valley Authority, an executive branch corporate agency and instrumentality of the United States. [Doc. 19 at 1]; *see* 16 U.S.C. § 831 *et seq*. To serve a United States agency or corporation, or an officer or employee sued in an official capacity, Rule 4(i)(2) requires a party to serve the United States and send a copy by registered or certified mail to the agency, corporation, officer, or employee. More specifically, Fed. R. Civ. P. 4(i)(2) provides:

> **(i) Serving the United States and Its Agencies, Corporations, officer, or Employees.**
> (1) **United States.** To serve the United States, a party must:
>     (A)(i) deliver a copy of the summons and complaint to the United States Attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or
>     (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;
>     (B) Send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and

14

(C) If the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

*See* Fed. R. Civ. P. 4(i)(1).

Rule 4(m), sets the time for service:

If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period . . . .

Fed. R. Civ. P. 4(m). "Therefore, to properly complete service of process in this case, plaintiff was required to serve the U.S. Attorney General, the U.S. Attorney for the Eastern District of Tennessee, and the named defendant, TVA President and CEO [Jeffrey Lyash] . . . all within the time period provided by Rule 4(m)." *Tanksley v. Tenn. Valley Auth.*, No. 1:16-cv-487, 2017 WL 6391473, *3 (E.D. Tenn. Dec. 14, 2017).

Where a plaintiff fails to serve a defendant within 90 days, courts in the Sixth Circuit undertake a "two-part analysis." *Stewart v. Tenn. Valley Auth.*, 238 F.3d 424, *1 (6th Cir. Nov. 21, 2000). First, the Court determines whether the plaintiff has shown good cause for failure to serve. *Id.* If so, an extension of time is mandatory under Rule 4(m). If the plaintiff fails to show good cause, the Court must either dismiss the action or direct that service be made within a specified time. *Id.*; *see Henderson v. United States*, 517 U.S. 654, 662 (1996). In other words, the court may "enlarge the 90-day period even if there is no good cause shown." *Henderson v. United States*, 517 U.S. 654, 662 (1996) (cleaned up)). "In light of these general principles, the Court must answer three questions in turn: (1) whether plaintiff served process on defendant in compliance with

15

Rule 4; (2) if not, whether plaintiff has shown good cause for this failure; and (3) if not, whether the Court should nonetheless exercise its discretion to retroactively extend the time for service." *Tanksley*, 2017 WL 6391473 at \*3.

Defendants assert that Plaintiff failed to timely serve Jeffrey Lyash in his official capacity by failing to serve the U.S. Attorney, Attorney General, and the named Defendant, all within 90 days of the filing of the Complaint. The only identified deficiency is the failure to serve the Attorney General. Though Plaintiff initially argued he was not required to serve the Attorney General, he later submitted proof of such service. Defendants do not contend that service on Mr. Lyash or the agency was improper, nor do they challenge the sufficiency of service on the U.S. Attorney.[4] *See* Fed. R. Civ. P. 12(h) ("A party waives any defense listed in Rule 12(b)(2)-(5) by . . . failing to . . . make it by motion under this rule; or include it in a responsive pleading . . . .").

The record clearly establishes that Plaintiff did not serve the U.S. Attorney, the Attorney General for this District, and the named Defendant within 90 days of filing the complaint. Plaintiff filed his Complaint on December 6, 2019, and was therefore required to effect service on all Defendants by March 5, 2020. Plaintiff avers he served the U.S. Attorney for the Eastern District of Tennessee on April 17, 2020, via certified mail. [Doc. 14 at 2; Doc. 28]. He avers he served the summons and complaint on Attorney General William Barr in Washington, D.C., on August 3, 2020, via certified mail. [Doc. 28 at 2]. Though Plaintiff urges TVA was aware of the lawsuit, "actual knowledge and lack of prejudice cannot take the place of legally sufficient service." *LSJ*

---

[4] "Concerning TVA and Mr. Lyash, the record shows Plaintiff's effort to serve the agency and the United States Attorney's Office for the Eastern District of Tennessee (Doc. 14) prior to filing the Amended Complaint. However, no service has even been attempted upon the United States Attorney General . . . ." [Doc. 19 at 6].

16

*Inv. Co. v. O.L.D., Inc.*, 167 F.3d 320, 324 (6th Cir. 1999). "Moreover, there is no basis under Rule 4 . . . for the Court to deem defendant properly served with process on the ground that plaintiff's failure to comply with Rule 4 is somewhat understandable." *Tanksley*, 2017 WL 6391473 at \*5. The Court finds Plaintiff did not timely serve the U.S. Attorney or the Attorney General, and accordingly failed to complete service as to TVA through Mr. Lyash in his official capacity within 90 days of filing the Complaint.

The Court must next consider whether Plaintiff has shown good cause for this failure and is therefore entitled to a mandatory extension of time to serve. Defendants argue that inadvertence and mistake of law are insufficient to establish good cause. Yet they have not pointed the Court to any case involving a *pro se* plaintiff, much less one who made multiple service attempts. In *Nafziger v. McDermott International, Inc.*, 467 F.3d 514, 521 (6th Cir. 2006), the plaintiff did not even obtain summonses until six months after filing the complaint. Here, Plaintiff obtained summonses early in the case, but misapprehended the requirements of the Federal Rules and believed he had properly served all parties. Defendants also cite *Campbell v. McMinn County*, 1:10-cv-278, 2011 WL 5921431 (E.D. Tenn. Nov. 28, 2011) for the proposition that "inadvertence, mistake, and ignorance of rules do not establish good cause." [Doc. 19 at 8]. But what the Court said in *Campbell* is that "[a] *lawyer's* inadvertence," "mistake of *counsel* and ignorance of the rules" usually does not suffice. *Id.* at \* 3 (emphasis added). And in *Campbell*, the plaintiff had essentially no explanation for the delay, offering only that the defendant was probably aware of the summons and complaint. *Id.* Similarly, in *Jones v. TVA*, No. 3:12-26 2013 WL 1748333 (E.D. Tenn. April 23, 2013), no summons was issued until almost a year after the complaint was filed,

17

and it does not appear plaintiff's counsel ever served the summonses on defendants. Such an obvious lack of diligence is not present here.

Nonetheless, Plaintiff's sole justification for his delay in serving the Attorney General is mistake of the law. He does not explain why he did not serve the U.S. Attorney within 90 days of filing the Complaint. Accordingly, the undersigned finds that Plaintiff has failed to show good cause for his failure to timely serve TVA in compliance with Federal Rule of Civil Procedure 4(i).

The inquiry does not stop there, however, as the Court has authority to extend the time for service without a showing of good cause. *See Henderson*, 517 U.S. at 662; Advisory Committee's Notes on Fed. R. Civ. P. 4, 1993 Amendment, Subdivision (m) ("The new subdivision… authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown . . . Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service."). Courts in this District have turned to "a non-binding, five-factor test to determine whether an extension of time is warranted." *Tanksley*, 2017 WL 6391473 at *6 (finding no good cause for plaintiff's delay but granting a discretionary extension); *Treadway v. Cal. Prods. Corp.*, No. 2:13-cv-120, 2013 WL 6078637, *6 (E.D. Tenn. Nov. 19, 2013) (same). The factors are: (1) whether a significant extension is required; (2) whether an extension would actually prejudice the defendant; (3) whether the defendant had actual notice of the lawsuit; (4) whether dismissal of the complaint without prejudice would substantially prejudice the plaintiff (by, *e.g.*, rendering the suit time-barred); and (5) whether the plaintiff made a diligent, good faith effort to effect proper service of process. *Id.*

18

Though the extension requested here is lengthy, it is not egregious. TVA would not be prejudiced by the extension, as it had actual notice of the lawsuit. *See Tanksley*, 2017 WL 6391473 at *9 ("TVA acquired actual knowledge of the action as a result of earlier proceedings—here, the EEOC charge . . . ."). And the record reflects that Plaintiff diligently attempted to serve everyone he believed he was required to serve and promptly corrected deficiencies when ordered by the Court. He filed executed summonses and documentation of service, including certified mail receipts and explanations of his efforts. The Court is also mindful that Plaintiff is proceeding *pro se*. While all litigants must abide by the Federal Rules of Civil Procedure, Rule 4(i)(1) is an unusually technical rule, riddled with conjunctions and readily misunderstood by a layperson. Though the complexity of the Rule does not excuse noncompliance, Plaintiff's good-faith efforts tip the scale in his favor. Under this specific combination of circumstances, the Court finds a discretionary extension is appropriate.[5] Accordingly, the Court recommends that Plaintiff be granted additional time to effect service of the summons and complaint *nunc pro tunc* to August 3, 2020. The record reflects that Plaintiff has cured the service defect identified in the Motion to Dismiss by serving the United States Attorney General. To the extent other service defects exist, Defendants have not identified any in their motion. *See Beeler v. Tenn. Valley Auth.*, No. 3:15-cv-580, 2016 WL 3937404, at *3, n. 5 (E.D. Tenn. July 18, 2016) (acknowledging defective service

---

[5] Because neither party addressed this discretionary test and the timing of the EEOC charge is not clear from the pleadings, the Court cannot fully evaluate whether Plaintiff's claims would become time-barred if dismissed. However, Plaintiff's allegations relate to conduct that occurred largely in 2014, some of which he allegedly became aware of in December 2016. This timing suggests that dismissal of his claims might foreclose the possibility of litigation on the merits. Dismissal of time-barred claims "is the most severe form of procedural prejudice a plaintiff can suffer," and when applicable, this factor weighs heavily in favor of extension. *Tanksley*, 2017 WL 6391473 at *8; *Treadway*, 2013 WL 6078637 at *6. In the absence of argument or relevant allegations, the Court has given this factor minimal consideration.

19

on individual defendants but declining to dismiss on this basis "since the individual defendants have not so moved, and Plaintiff has not been given notice of this deficiency and an opportunity to respond"). As Plaintiff has now served the United States Attorney General in compliance with Rules 4(i) and (m), the undersigned recommends TVA's motion to dismiss under 12(b)(5) be **DENIED**.

## V.      Conclusion

For the reasons stated herein, it is **RECOMMENDED** that the Motion to Dismiss [Doc. 18] be **GRANTED IN PART** and **DENIED IN PART** as follows:

1.  The undersigned recommends Plaintiff's claims under Title VII and the Age Discrimination in Employment Act be **DISMISSED** as to Defendants John Terry, Edward Spoone, Kristi Foxx, and Jamie Lynch.

2.  The undersigned further recommends the Motion [Doc. 18] be **DENIED** as to Plaintiff's remaining claims.[6]

**ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE

---

[6] Any objections to this Report and Recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to Rule 72(b)'s requirements. Failure to file objections within the time specified constitutes a forfeiture of the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

20